UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| HATTERAS PRESS, INC., | : | CIVIL ACTION NO. 16-5420 (MLC) |
|---|---|---|
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : | |
| AVANTI COMPUTER SYSTEMS LIMITED, | : | |
| Defendant. | : | |

**COOPER, District Judge**

Plaintiff Hatteras Press, Inc. ("Hatteras") is a commercial printing company that entered into a License Agreement with Defendant Avanti Computer Systems Limited ("Avanti") to use Avanti's "Slingshot" software platform. Hatteras alleges that the Slingshot software platform has not functioned properly and has sued Avanti for damages under several theories of liability. Avanti has now moved to dismiss Count Two (violations of the New Jersey and Delaware Consumer Fraud Acts), Count Four (breach of the implied covenant of good faith and fair dealing), and Count Six (unjust enrichment) of the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP). (Dkt. 15.)[1] For the reasons below, we will grant in part and deny in part Avanti's motion. We resolve this motion without oral argument. See L.Civ.R. 78.1(b).

---

[1] The Court will cite documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers as "dkt." Pincites reference ECF pagination.

## I. Background

Hatteras is a commercial printing company that entered into a License Agreement with Avanti in August 2014 to use Avanti's proprietary "Slingshot" software platform. (Dkt. 14 at 2–3.) The Slingshot software platform is designed to assist commercial printers with various aspects of their businesses. (Id. at 3–4.) Hatteras alleges that Avanti made numerous false representations about the capabilities of the platform and further alleges that the Slingshot software platform has proven to be "worthless and useless." (Id. at 3–7.) Seeking compensation for its alleged damages, Hatteras sued Avanti under a number of legal theories, and specifically: (1) common law fraud, fraud in the inducement, and fraudulent non-disclosure; (2) violations of the New Jersey and Delaware Consumer Fraud Acts; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) breach of warranty; and (6) unjust enrichment. (Id. at 8–19.)

Avanti has moved to dismiss three counts of Hatteras' Amended Complaint. First, Avanti argues that Hatteras cannot recover under the New Jersey Consumer Fraud Act or Delaware Consumer Fraud Act because those statutes are inapplicable to the parties' transaction. (Dkt. 15-3 at 11–15.) Second, Avanti argues that Hatteras cannot recover under the implied covenant of good faith and fair dealing because the parties' dispute is covered by the express terms of the License Agreement. (Id. at 15–17.) Third, Avanti argues that the existence of the License Agreement precludes Hatteras' recovery under an unjust enrichment theory. (Id. at 17.) Finally, Avanti asks us to dismiss Hatteras' claims for certain damages as precluded under the terms of the License Agreement. (Id. at 18.) We address each argument in turn.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, a court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the sufficiency of a plaintiff's factual pleadings, a court must take three steps:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citations and quotation marks omitted). However, "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (quotation omitted).

**III.   Consumer Fraud Claims**

   A.   Parties' Arguments

Avanti argues that Hatteras cannot recover under the New Jersey Consumer Fraud Act ("NJCFA") or Delaware Consumer Fraud Act ("DCFA"). Avanti's primary argument is that the NJCFA does not apply to this case because Avanti and Hatteras are sophisticated commercial entities and their business dealings cannot be considered a "consumer oriented" transaction falling within the scope of the NJCFA. (Dkt. 15-3 at 12.) Avanti submits that Hatteras' DCFA claims should fail for the same reason because the DCFA is "almost identical" to the NJCFA. (Id. at 11–12.) Avanti also argues that the DCFA does not apply because the Amended Complaint alleges no acts taking place in Delaware. (Id. at 15.)

Hatteras responds that the NJCFA should be interpreted broadly, and that its scope extends to the dispute in this case. (Dkt. 16 at 19–20.) Hatteras notes that the NJCFA has been extended to cover transactions between corporate entities and disputes Avanti's characterization of Hatteras as a sophisticated consumer. (Id. at 22.) Highlighting various allegations in the Amended Complaint, Hatteras argues that it "fell for . . . misrepresentations, hook, line, and sinker" and argues it should be entitled to relief under the NJCFA. (Id.)

   B.   Analysis

The NJCFA provides that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as

> aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2.

"Merchandise" under the NJCFA is defined broadly as "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1. The NJCFA seeks to "protect consumers who purchase goods or services generally sold to the public at large," and the "[t]he entire thrust of the Act is pointed to products and services sold to consumers in the popular sense." Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 514 (3d Cir. 2006) (internal quotations and citations omitted). It is the "character of the transaction, not the identity of the purchaser, which determines whether the [NJCFA] is applicable." Reckitt Benckiser LLC v. Cotiviti, LLC, No. 16-729, 2016 WL 5791410, at *3 (D.N.J. Oct. 3, 2016) (quoting Finderne Mgmt. Co., Inc., v. Barrett, 955 A.2d 940, 954 (N.J. Super. Ct. App. Div. 2008)). Protections under the NJCFA are extended to corporate plaintiffs "in a consumer oriented situation." Papergraphics Int'l, Inc. v. Correa, 910 A.2d 625, 628 (N.J. Super. Ct. App. Div. 2006); see also Hundred East Credit Corp. v. Eric Shuster Corp., 515 A.2d 246, 249 (N.J. Super. Ct. App. Div. 1986) (finding that "unlawful practices thus can victimize business entities as well as individual customers").

The NJCFA, however, "does not cover every sale in the market place," and its "applicability hinges on the nature of a transaction, requiring a case by case analysis." Papergraphics, 910 A.2d at 628. Courts have concluded that the NJCFA simply does not apply to certain types of transactions. See, e.g., J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1273 (3d Cir. 1994) (finding CFA inapplicable to

purchase of commercial restaurant franchise); A.H. Meyers & Co. v. CNA Ins. Co., 88 F. App'x 495, 500 (3d Cir. 2004) (finding CFA inapplicable to insurance agency agreement); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 179 F.R.D. 450, 469 (D.N.J. 1998) (explaining that "purchasers of wholesale goods for resale are not consumers within the meaning of the NJCFA").

In other cases more closely resembling consumer transactions, courts have examined various factors to assess whether a corporate plaintiff may bring a claim under the NJCFA. In finding the NJCFA inapplicable to the plaintiff's claims in Papergraphics, the state appellate court highlighted that: (1) the purchased goods were resold at a profit; (2) the parties were "experienced commercial entities of relatively equal bargaining power" and the plaintiff "was not an unsophisticated buyer suffering a disparity of industry knowledge"; (3) the parties negotiated the relevant contracts; and (4) the plaintiff had taken steps to guard against the possibility of receiving fraudulent goods. Papergraphics, 910 A.2d 625 at 629. In another case with circumstances reminiscent of those here, the state appellate court declined to extend the NJCFA to cover a commercial transaction for the acquisition of a complex software platform. See Princeton Healthcare Sys. v. Netsmart N.Y., Inc., A.3d 361, 365 (N.J. Super. Ct. App. Div. 2011). There, the court cited: (1) that the purchase had been made pursuant to a request for proposals from the plaintiff; (2) that the parties had engaged in a two-year process for evaluating proposals, including visiting other customers that had installed similar software platforms; (3) that the software platform had been customized for the plaintiff's use; (4) that the defendant had been an active participant in implementing the software; and (5) that the

6

parties had engaged in extensive negotiations with the help of consultants and legal counsel. Id.

These cases provide a workable roadmap for courts to determine on a case-by-case basis whether certain corporate dealings fall within the scope of the NJCFA. That determination, however, is premature at this stage. It is true that the Amended Complaint pleads certain facts relevant to determining the applicability of the NJCFA, such as that the parties negotiated a License Agreement and that the product was, at least in part, customized for Hatteras through the use of specialized modules. (Dkt. 14 at 2–3.) Other factors, however, such as the parties' relative sophistication, or the extent to which Hatteras engaged consultants during negotiations, are less clear. Indeed, the parties actively dispute whether Hatteras should be considered a "sophisticated" consumer at all. (Dkt. 15-3 at 14; dkt. 16 at 22.) Courts evaluating these questions have generally relied on discovery records, and we conclude that the applicability of the NJCFA to Hatteras' claims is better left for summary judgment or trial. See Reckitt Benckiser, 2016 WL 5791410, at *4 (noting that "the issue of whether Defendants' services constituted merchandise offered to the public [under the NJCFA] presents factual issues that exceed the scope of a motion to dismiss . . . resolution of Defendants' objections must await summary judgment or trial"). We will therefore deny Avanti's motion to dismiss Hatteras' claims under the NJCFA.

We will, however, grant Avanti's motion to dismiss Hatteras' claims under the DCFA. The DFCA requires plaintiffs to demonstrate, *inter alia*, that "some conduct took place in Delaware." See Marshall v. Priceline.com Inc., No. 05C-02-195, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) (explaining that "while incorporation may

be enough to allow Delaware law to apply to a dispute, it is not enough to allow the DCFA to apply to fraudulent transactions which did not occur in Delaware"). The Amended Complaint does not allege that fraudulent acts occurred in Delaware. In any event, Hatteras appears to concede the inapplicability of the DCFA. (See dkt. 16 at 18 ("Avanti's counsel has also acknowledged . . . that because plaintiff's Complaint alleges no harm within the State of Delaware, and the DCFA does not have extraterritorial effect, the NJCFA should govern . . .").) Accordingly, we will dismiss Hatteras' DCFA claims with prejudice.

## IV. Implied Covenant of Good Faith and Fair Dealing

A. Parties' Arguments

Avanti argues that Hatteras cannot recover under the implied covenant of good faith and fair dealing (the "implied covenant") because the implied covenant only applies to fill gaps where the underlying contract does not address the dispute at hand. (Dkt. 15-3 at 15– 16.) In Avanti's view, the License Agreement governs the parties' dispute because it arises out of the implementation of Avanti's software platform. (Id. at 16–17.) Hatteras takes a broader view of the implied covenant, and argues generally that it may be "utilized to enforce the reasonable expectations of the contracting parties." (Dkt. 16 at 25.)

B. Analysis

"The covenant of good faith and fair dealing arises under contract." See Tekstrom, Inc. v. Savla, 918 A.2d 1171 (Del. 2007). We consequently analyze Hatteras' implied

8

covenant claim under Delaware law in accordance with the choice of law provision in the License Agreement. (Dkt. 14-1 at 6.)[2]

Delaware courts have characterized the implied covenant as a "limited and extraordinary legal remedy." Nemec v. Shrader, 991 A.2d 1120, 1128 (Del. 2010); see also Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co., No. 1668-N, 2006 WL 2521426, at *6 (Del. Ch. Aug. 25, 2006) ("[I]mposing an obligation on a contracting party through the covenant of good faith and fair dealing is a cautious enterprise and instances should be rare."). The implied covenant under Delaware law is designed to "infer[] contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." Nemec, 991 A.2d at 1125. Courts utilize the implied covenant to "imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." Id. Put another way, the "[t]he implied covenant seeks to enforce the parties' contractual bargain by implying only those terms that the parties would have agreed to during their original negotiations if they had thought to address them." See Gerber v. Enter. Prod. Holdings, LLC, 67 A.3d 400, 418 (Del. 2013), overruled on other grounds by Winshall v. Viacom Int'l, Inc., 76 A.3d 808 (Del. 2013).

Our inquiry, under Delaware law, is whether "the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of

---

[2] Because we apply Delaware contract law, we do not address Hatteras' arguments related to the implied covenant of good faith and fair dealing under New Jersey law. (Dkt. 16 at 24–25.)

as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter." Id. We approach the inquiry cautiously, as the implied covenant "cannot properly be applied to give the plaintiffs contractual protections that they failed to secure for themselves at the bargaining table." Winshall, 76 A.3d at 816 (internal quotations omitted).

We agree with Avanti that Hatteras has failed to adequately plead a claim for breach of the implied covenant under Delaware law. Hatteras' Amended Complaint alleges only that "[t]he actions of defendant Avanti as described . . . which include claims for fraud, deceit and misrepresentations . . . and breach of contract . . . constitute a breach of the implied covenant of good faith and fair dealing existing between the parties arising from their contractual relationship." (Dkt. 14 at 14.) Although the Amended Complaint contains numerous allegations about Avanti's purported misrepresentations, it does not contain any allegations characterizing Avanti's actions as a breach of a contract term that the parties "would have agreed to during their original negotiations if they had thought to address them" See Gerber, 67 A.3d at 418. Instead, Hatteras' claim for a breach of the implied covenant appears to rest on the same conduct that underpins its breach of contract and breach of warranty claims. In light of the insufficiency of Hatteras' pleading and the implied covenant's status as a "limited and extraordinary legal remedy," Nemec, 991 A.2d at 1128, we will dismiss Hatteras' implied covenant claim without prejudice.

## V. Unjust Enrichment

### A. Parties' Arguments

Avanti argues that Hatteras' unjust enrichment claim must be dismissed because quasi-contract claims such as unjust enrichment cannot proceed where there is a valid contract. (Dkt. 14 at 17.) Hatteras argues that it is entitled under the Federal Rules of Civil Procedure and pertinent case law to plead an unjust enrichment claim in the alternative. (Dkt. 16 at 27–29.) Hatteras also argues that its unjust enrichment claims should survive because they "do not concern the identical subject matter" as its breach of contract claims. (Id. at 30.) Avanti replies that Hatteras should be barred from pleading unjust enrichment in the alternative because the validity of the underlying contract is not in dispute. (Dkt. 17 at 11.)

### B. Analysis

We now turn to whether Hatteras has adequately pleaded a claim for unjust enrichment under New Jersey law.[3] "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." Nat'l Amusements, Inc. v. N.J. Turnpike Auth., A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992), aff'd, 645

---

[3] Both parties appear to agree that New Jersey law applies to Hatteras' unjust enrichment claim. Hatteras, in its opposition brief, cites additional Delaware case law but notes that Delaware law of unjust enrichment is "virtually the same as New Jersey law. (Dkt. 16 at 31.) Our decision to apply New Jersey law is strengthened by the fact that the choice of law provision in the License Agreement only pertains to the governing law of "the Agreement." (Dkt. 14-1 at 6; see also Bd. of Educ. of the Twp. of Cherry Hill, Camden Cty. v. Human Res. Microsystems, Inc., No. 09-5766, 2010 WL 3882498, at *4 (D.N.J. Sept. 28, 2010) ("Generally, when a choice-of-law provision is intended to apply not only to interpretation and enforcement of the contract but also to any claims related to the contract, the language used is broader.").) We have also previously applied New Jersey law in evaluating unjust enrichment claims because there are few substantive differences across jurisdictions. See Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 723 (D.N.J. 2011) ("Since no actual conflict exists, New Jersey law will be applied to all Plaintiffs' unjust enrichment claim.").

A.2d 1194 (N.J. Super. Ct. App. Div. 1994). To demonstrate unjust enrichment, a plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733 (D.N.J. 2008).

"[Q]uasi-contract claim such as unjust enrichment cannot exist when there is an *enforceable* agreement between parties." Id. (emphasis in original). Accordingly, we have repeatedly held that quasi-contract theories are unavailable when a valid contract exists. See Hillsborough Rare Coins, LLC v. ADT LLC, No. 16-916, 2017 WL 1731695, at *6 (D.N.J. May 2, 2017) (listing cases). We have also concluded that quasi-contract theories cannot be pleaded in the alternative absent a claim that the contract is invalid. Id. (citing Freightmaster USA, LLC v. Fedex, Inc., No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015)). The primary case cited by Hatteras, Caputo v. Nice-Pak Prod., Inc., is distinguishable on this point. 693 A.2d 494, 497 (N.J. Super. Ct. App. Div. 1997). In Caputo, the court concluded that a jury was entitled to hear breach of contract and unjust enrichment claims in the alternative. Id. But Caputo, unlike this case, involved questions of whether there was a valid contract at all. Id.

We conclude that Hatteras' unjust enrichment claims must be dismissed. There are no allegations in the Amended Complaint that the License Agreement is or may be invalid. While Hatteras, in its brief opposing this motion, expresses concern that it might "not prevail on its contract claims for some technical reason" (dkt. 16 at 31), the bare allegation that a contract may be invalid does not warrant departing from our previous decisions holding that a claim for unjust enrichment may not be pleaded in the alternative

12

absent a claim that the contract is invalid. Freightmaster, 2015 WL 1472665, at *6. In reaching our conclusion, we are mindful that a claim for unjust enrichment might survive if it pertained to some unlawful benefit received outside the scope of the contract. See id. (noting that unjust enrichment claim could survive if plaintiff "performed work beyond that covered by the [a]greement"). But the allegedly unjust benefit received by Avanti here—the $234,231.61 paid by Hatteras in exchange for a purportedly worthless software platform—is the same benefit Hatteras seeks to recover in its breach of contract claim. (Dkt. 14 at 14–19.) The possible refund of the fees is expressly provided for in the terms of the License Agreement. (Dkt. 14 at 5.) In light of these circumstances, we will dismiss Hatteras' unjust enrichment claims with prejudice.

## VI. Damages Limitation

Avanti asks us to dismiss all remedies sought by Hatteras other than the limited remedies provided for in the License Agreement. (Dkt. 15-3 at 18.) The License Agreement limits liability under the contract to the total fees and charges paid by the licensee (here, Hatteras). (Dkt. 14-1 at 4.) Hatteras responds that the License Agreement does not preclude certain classes of damages, including the punitive damages it seeks under its fraud claims or the treble damages it seeks under the NJCFA. (Dkt. 16 at 33–34.) We see no reason at this early stage to limit the damages Hatteras may recover or decide if the provisions of the License Agreement are enforceable to limit the damages Hatteras may seek under various theories of liability. See, e.g., Berman v. ADT LLC, No. 12-7705, 2013 WL 6916891, at *8 (D.N.J. Dec. 13, 2013) (declining to consider defendant ADT's argument to limit any award of damages to the amount set forth in the contract because "[i]t is inappropriate for the Court

to wade into factual issues, such as the measure of Plaintiffs' damages, on a motion to dismiss"). Accordingly, we will deny Avanti's motion insofar as it seeks to limit damages based on the terms of the License Agreement.

## VII. Conclusion

For the reasons discussed above, we will: (1) grant Avanti's motion to dismiss Hatteras' DCFA claim and dismiss that claim with prejudice; (2) grant Avanti's motion to dismiss Hatteras' claim for breach of the implied covenant of good faith and fair dealing and dismiss that claim without prejudice; (3) grant Avanti's motion to dismiss Hatteras' unjust enrichment claim and dismiss that claim with prejudice; (4) deny Avanti's motion to dismiss Hatteras' claim under the NJCFA; and (5) deny Avanti's motion to dismiss Hatteras' claim for damages purportedly disclaimed by the terms of the License Agreement.

  s/ Mary L. Cooper  
**MARY L. COOPER**
United States District Judge

Dated: June 30, 2017